No. 2924

Second Circuit

---

WOODS

v.

MELLER AND UNION INDEMNITY CO.

---

(June 28, 1927. Opinion and Decree.)
(July 15, 1927. Application for Rehearing.)

---

(*Syllabus by the Court*)

1. **Louisiana Digest—Master and Servant —Par. 159, 159a.**

Where an employee, in an accident growing out of and in the course of his employment, has the nail and flesh on the ends of his first and second fingers torn off and a joint of his first finger widened so as slightly to crook the end of the finger, which temporarily totally disables him to do work of any reasonable character; and where after the termination of the temporary total disability the employee is able to perform similar work to that he was doing when injured and at a higher daily wage than he had been

receiving, he will be entitled to compensation under clause (a) of subsection 1 of section 8 of the Workmen's Compensation Law (Act No. 20 of 1914 and amendments) as for an injury producing temporary total disability to do work of any reasonable character, but not also under clause (e) of said subsection.

Landwehr vs. American Can Co., 5 La. App. 350; Morrison vs. U. S. Fidelity & G. Co., 5 La. App. 427; Parker vs. Leton Gin Co., 15 La. App. 727; Alexander vs. Magnolia Pipe Line Co., 5 La. App. 672; Fuller vs. Robinson Const. Co., 5 La. App. 241; Bell vs. Merchants Cotton Oil Co., 2 La. App. 564; Black vs. La. Central Lumber Co., 161 La. 889, 109 South. 538.

2.  Louisiana Digest—Master and Servant —Par. 160e, 160i.—Insurance—Par. 170.

Where a contract of indemnity between an insurer and an employer provides that the former "will pay promptly to any person entitled thereto, under the Workmen's Compensation Law, and in the manner therein provided, the entire amount of any sum due and all installments thereof as they became due," that such obligations are direct promises of the insurer to the employees, that the contract is made for the benefit of and is enforceable against the company by any such employee in his own name in a proceeding against the insurer alone or jointly with the employer, an injured employee may maintain an action for compensation against his employer and the insurer in solido.

(The recent amendment of Act 20 of 1914 is Act 85 of 1926.—Editor's Note.)

Appeal from the First Judicial District Court of Louisiana, Parish of Caddo. Hon. T. F. Bell, Judge.

Action by G. B. Woods against A. Meller and Union Indemnity Company.

There was judgment for plaintiff and defendants appealed.

Judgment reversed.

T. Overton Brooks, of Shreveport, attorney for plaintiff, appellee.

Herndon & Herndon; Barnette & Roberts, of Shreveport, attorneys for defendants, appellants.

STATEMENT OF THE CASE

REYNOLDS, J. Plaintiff sued defendant Meller under the Workmen's Compensation Law for $8.00 a week for four hundred weeks beginning October 28, 1925, or, in the alternative, for $4,000.00, with legal interest thereon from that date, under the general law of master's liability for injury to his servant by reason of the master's negligence.

He alleged that while engaged in drilling for water for defendant Meller in the State of Texas on October 28, 1925, at a daily wage of $8.00 under a contract of employment between them entered into in the State of Louisiana his left hand was caught in a revolving chain while he was in the act of pulling out a clutch lever and the first phalanx of the third finger of the hand torn or severed from the hand, the second finger badly bent and made crooked and weak, and the entire hand injured to such extent as to render it unfit and unsuited for the duties of his occupation of well driller.

He further alleged that the accident and consequent injury were the direct result of the absence from the rig with which he was doing the work of a bracket and that the absence of the bracket rendered the rig defective; that he had frequently called the attention of the defendant Meller to the absence of the bracket and that he omitted to have the bracket replaced and that he even refused to permit plaintiff to replace it.

Defendant Meller filed an exception to the jurisdiction of the court ratione materiae insofar as the action was pitched

upon the Workmen's Compensation Law, alleging that both the contract of employment and the accident to plaintiff took place in the State of Texas and that the laws of the State of Louisiana have no application to the alleged cause of action.

The exception was overruled.

Defendant Meller also filed an exception of no right and no cause of action to plaintiff's alternative alleged cause of action.

This exception also was overruled.

Plaintiff filed a motion for judgment under the Workmen's Compensation Law on the face of his petition on the ground that the legal delays had expired without an answer being filed.

This motion was denied.

Defendant Meller, reserving his rights under the exception to the jurisdiction of the court ratione materiae, answered denying liability and alleging that plaintiff was intoxicated at the time of the accident and that he wilfully and intentionally injured himself.

Plaintiff then filed a supplemental petition in which, after reiterating and adopting all of the allegations and prayer of his original petition, in which he alleged that under a contract of indemnity between defendant Meller and the Union Indemnity Company the latter had agreed to indemnify the former for whatever compensation he might be liable to pay his employees; that this contract inured to the benefit of plaintiff and that he was entitled to judgment against both defendant Meller and the Union Indemnity Company in solido for the compensation sued for.

He further alleged that defendant had paid to him $84.00 on account of compensation and also furnished medical aid to the value of $29.00 and that in consequence he was estopped to deny his liability to plaintiff under the Workmen's Compensation Law.

He further alleged that the injury to him occurred in the State of Texas and that the rights and liabilities of himself and defendant Meller are governed by the laws of that State; that under the laws of the State of Texas an employer of three or more workmen in any occupation other than those of domestic servant, farm laborer or ranch laborer, is compelled to elect whether he will be governed by the Employers' Liability Law of that State or not and that defendant Meller had failed to elect whether he would come under the operation of the law or not.

That under the laws of the State of Texas an employer who does not come under the operation of the Workmen's Compensation Law is deprived of the defenses of contributory negligence, negligence of a fellow servant, and assumption of the risks of the employment in an action against him by his employee.

And he prayed for judgment against the defendant Meller and the Union Indemnity Company in solido as prayed for in his original petition.

Defendant Meller, reserving his rights under his exception of no right and no cause of action to plaintiff's alternative demand, answered that plaintiff was estopped to prosecute his suit under his alternative demand because he had obtained from the court judgment that he was entitled to prosecute his suit under the Workmen's Compensation Law of Louisiana.
of Louisiana.

Further answering, he denied that plaintiff was injured as claimed and denied that a bracket was missing from the drilling rig or that the rig was defective, and alleged that plaintiff was experienced in the use of the drilling rig and that

if it was defective he assumed the risks incident to operating it in such condition.

Defendant Union Indemnity Company filed an exception of no right of action to the petition.

This exception was overruled.

Thereupon the Union Indemnity Company answered admitting the existence of the contract of indemnity between defendant Meller and it but denying liability to plaintiff thereunder for the reason that it only covered liability for injuries happening to defendant Meller's employees in the State of Louisiana.

On these issues the case was tried and judgment was rendered in favor of plaintiff and against both Meller and the Union Indemnity Company in solido for compensation, apparently under the Workmen's Compensation Law of Louisiana, for $20.00 a week for eight weeks with legal interest on each installment from its maturity until paid, and also for $3.00 a week for an additional one hundred weeks, with legal interest on each installment from its maturity until paid; less a credit of $84.00 already paid.

From this judgment both defendants have appealed.

Plaintiff answered their appeals , and asked that as to the judgment for $20.00 a week for eight weeks that it be affirmed and that as to the judgment for $3.00 a week for one hundred · weeks that it be increased to $8.00 a week for one hundred weeks.

Counsel for defendant Meller, in brief, say:

"Defendant found no objection to that part of the judgment · allowing plaintiff eight weeks' compensation at $20.00 per week, but did object to the additional one hundred weeks at $3.00 per week"; and they urge no other · objection to the judgment. Therefore, quo ad him, the only

question to be decided by the court is whether the award of compensation for one hundred weeks at $3.00 a week in addition to the eight weeks at $20.00 a week was correct or not.

Doctor J. ' C. Pau testified that he was the first physician that treated plaintiff's injury and that he found—

"a laceration of the first and third fingers; the nail was jerked off the first finger and the third of the left hand. That was the extent of the injuries, as I remember."

"Q. Explain, doctor, just the condition of his hand when . you first saw him?

"A. Well, it was lacerated and torn; that is, those three fingers; and the nail was torn off the forefinger, and the soft tissues were cut off the end.

"Q. How far up in the hand did that injury extend?

"A. Well, it was just those fingers, and I expect the whole length of the fingers was bruised and ' lacerated."

* * *

"Q. Doctor, in examining the injury, could you tell whether or not the tissues and muscles were injured by the accident?

"A. Well, yes, they were.

"Q. Well, what about the bones?

"A. Well, at the time I did not think there was any injury to the bone, and I told him that at the time.

"Q. What about your opinion at the present time?

"A. Well, he has, I think, the second joint of the second finger, that was on one side at the time, but I didn't think the finger was injured.

"Q. Now, that widening of the joint or bone there shows up when you look at the hand?

"A. No, it don't; still, the finger there is ·crooked in the joint.                ,

* * *

"Q. Could you tell whether or not, of your own knowledge, this crookedness of the finger was caused by the accident?

"A. I could not say that it was.

* * *

"Q. It is nothing unusual for a man to have a crooked finger?

"A. Well, I expect the most of us have crooked fingers.

\* \* \*

"Q. Of course, with the ordinary experience with a wound of this kind, how long is it usually before a man is able to go back to work?

"A. With lacerations and contusions and bruises like that, as shown on Mr. Wood's hand, it would probably be two months anyway. Of course, as to the nails, it would take time to grow the nails back.

"Q. You know of no reason why it should not be as good as it ever was, do you?

"A. Well, as far as my diagnosis of the case, absolutely none.

"Q. And he should have been able to go back to work at his regular occupation within six or eight weeks?

"A. Yes, sir; that was my idea at the time, as to the lacerations of the wound.

"Q. And the lacerated wounds did heal as you expected them to?

"A. Yes, sir; they healed.

"Q. Properly?

"A. Yes, sir.

"Q. Now, Mr. Woods claims in Article 6 of his petition that his finger or a portion of his finger is missing. That is, the third finger is severed from the hand. (Witness examined the hand of plaintiff.)

"A. No; it is there.

"Q. He has the end of his finger there?

"A. Yes, sir.

"Q. Examine the hand again and state whether or not you know of any reason why his hand should not be as good as it ever was?

(Witness examined plaintiff's hand.)

"A. There perhaps will be a permanent deformity of the end of the first and third fingers or fourth finger and the ring finger, which ought not to hinder him from work. The second finger there is, I think, bone there—I did not notice that at the time I made the examination.

"Q. Now, that, of course, is merely a bend?

"A. Yes, a bend I mean—not a bone.

"Q. Now, from the nature of your examination and the injury, would you say that that was caused by the injury?

"A. I don't know; I did not detect it at the time.

\* \* \*

"Q. To what extent is that finger crooked?

"A. I don't know; not very much.

"A. Yes, sir; it is hardly perceptible.

"A. Yes, sir; it is harly perceptible.

\* \* \*

"Q. Now, examine Mr. Woods' right hand as well as his left hand, and see if there is any difference between the hands?

"A. Well, that finger is crooked on the left hand. That's about the only thing I see. I think the ring finger is a little shorter than the other.

"Q. That is natural, is it not?

"A. Well, I expect so."

The plaintiff, G. B. Woods, testified:

"Q. Mr. Woods, you state in your petition that the first phalanx of your third finger, left hand, is torn and severed from your hand. Now, show the court your finger.

(Witness shows finger to court.)

"A. The tip of the finger is there.

"Q. The phalanx is still on the finger, is it not?

"A. None of the bone is torn off, but the flesh and the whole nail was stripped back to here. The bone was not pulled off, if that is what the phalanx is.

"Q. The flesh and skin are on the end of the finger now?

"A. They have grown back.

"Q. The finger is intact at this time?

"A. I would not call it; it is shorter than the other and shorter than it previously was.

"Q. How much shorter?

"A. Probably a quarter of an inch, at least."

The evidence makes clear that plaintiff was temporarily totally disabled by his injury and that he was entitled to compensation during such temporary total disability.

The trial court fixed the duration of his temporary total disability at eight weeks and in our opinion this fixing was correct.

The plaintiff testified:

"Q. What is the highest wages that you have been getting since the accident, Mr. Woods?

"A. I was paid $10.00 a day for fifteen days.

"Q. How long did that last?

"A. Fifteen days.

"Q. What have you been paid since?

"A. That is the last work that I did."

From which it appears that since the termination of his temporary total disability plaintiff has been able to earn more than he was earning before he was injured notwithstanding the injury.

Plaintiff, therefore, is not entitled to compensation under clause (e) of subsection 1 of section 8 of the Workmen's Compensation Law as for a serious permanent impairment of a physical function, and the allowance by the District Court of compensation for one hundred weeks at $3.00 a week under this clause as for a serious permanent impairment of a physical function was erroneous.

This brings us to the defenses set up by the defendant Union Indemnity Company, namely:

That the petition does not state facts sufficient to make the laws of the State of Louisiana applicable, but on the contrary show that the contract of employment was entered into and the injury occurred in the State of Texas, and that there was neither allegation nor proof that the defendant Meller was insolvent or that an execution upon a judgment against him for compensation had been returned unsatisfied.

The first contention cannot be sustained for the reason that the policy of indemnity provides in paragraph 6 thereof that—

"This agreement shall apply to such injuries so sustained by reason of the business operations described in said declaration which, for the purpose of this insurance, shall include all operations necessary, incident or appurtenant thereto, or connected therewith, whether such operations are conducted at the work places defined and described in said declarations or elsewhere in connection with, or in relation to, such work places."

And, in paragraph 1(b) that the insurer will indemnity defendant Meller.

"against loss by reason of the liability imposed upon him by law for damages on account of such injuries to such of his said employees as are legally employed wherever such injuries may be sustained within the territorial limits of the United States of America * * * "

Nor can the second contention be sustained, for the reason that it is also provided in the policy of indemnity, paragraph D, that—

"The obligations of paragraph 1(a) foregoing are hereby declared to be the direct obligations and promises of the company to any injured employee covered hereby * * * and to each such employee * * * the company is hereby made directly and primarily liable under said obligations and promises. This contract is made for the benefit of such employees * * * and is enforceable against the company by any such employee * * * in his name* * * at any time and in any manner permitted by law, whether claims or proceedings are brought against the company alone or jointly with his employer * * * "

The obligations of paragraph 1(a) are—

"To pay promptly to any person entitled thereto, under the Workmen's Compensation Law, and in the manner therein provided, the entire amount of any sum due, and all installments thereof as they become due."

Under these provisions of the policy of indemnity the Union Indemnity Company is bound in solido with defendant Meller for compensation to plaintiff for his injuries to the same extent that the defendant Meller is and this though the accident occurred in the State of Texas and not in the State of Louisiana.

The Workmen's Compensation Law of the State of Texas was not introduced in evidence but will be presumed to be the same as that of the State of Lou-

isiana and under the Workmen's Compensation Law of the State of Louisiana the drilling of a well for water is a hazardous occupation and plaintiff received his injury in an accident growing out of and incidental to his employment.

For these reasons it is ordered, adjudged and decreed that so much of the judgment appealed from as awards plaintiff compensation for eight weeks at $20.00 per week with legal interest on each installment from its maturity until paid, subject to a credit of eighty-four dollars already paid, be affirmed, and that so much of said judgment as awards plaintiff further compensation for one hundred weeks at $3.00 per week with legal interest on each installment from its maturity until paid, be annulled, avoided and reversed. The costs of this appeal to be paid by plaintiff.